UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| FIFTY-NINE THOUSAND, FIVE | ) | |
| HUNDRED DOLLARS ($59,500.00) | ) | |
| SUPPORTING A CASHIER'S CHECK, | ) | |
| #8261595, | ) | |
| | ) | |
| Defendant. | ) | |

## VERIFIED COMPLAINT FOR FORFEITURE

COMES NOW Plaintiff the United States of America, by and through its attorneys, Richard G. Callahan, United States Attorney for the Eastern District of Missouri, and Richard E. Finneran, Assistant United States Attorney for said district, and for its Verified Complaint for Forfeiture states as follows:

### NATURE OF THE ACTION

1.      This is a civil action in rem brought by the United States, pursuant to 18 U.S.C. § 981, seeking forfeiture of all right, title, and interest in the above-captioned defendant property, which is property traceable to proceeds of a conspiracy to illegally import misbranded and adulterated prescription drugs into the United States, among other objects.

2.      The defendant property is $59,500.00 representing a portion of the proceeds of said conspiracy.

1

**JURISDICTION AND VENUE**

3.      This Court has jurisdiction over the subject matter pursuant to 28 U.S.C. §§ 1331,

1345, and 1355 because this is a civil action arising under the laws of the United States, because it

is a proceeding of forfeiture, and because it has been brought by the United States.

4.      This Court has jurisdiction over the parties pursuant to 28 U.S.C. §§ 1345 and 1355

because this is a proceeding for forfeiture, and because it has been brought by the United States.

5.      Venue is placed in the Eastern District of Missouri pursuant to 28 U.S.C. § 1355

because an act giving rise to the forfeiture occurred in the Eastern District of Missouri.

**BASIS FOR FORFEITURE**

6.      The defendant property is subject to forfeiture under 18 U.S.C. § 981(a)(1)(c)

property traceable to proceeds of a conspiracy carry out various specified unlawful activities as set

forth in detail below.

**THE CONSPIRACY**

7.      Beginning in approximately March, 2014, Michael Mimlitz began ordering

misbranded Human Growth Hormones to use with patients for unauthorized purposes, including

body building and athletic performance improvement.   In response to his orders, multiple

packages of Human Growth Hormone ("HGH") were smuggled into the United States.   HGH has

been approved by the U.S. Food and Drug Administration for several narrow medical uses, such as

short stature in children with chronic renal insufficiency disease, Turner or Prader-Willi

syndromes, or adults with wasting diseases such as AIDS.   The FDA has not approved HGH for

any body-building, anti-aging, or weight loss treatment

8.      Mimlitz was employed at a medical clinic in St. Louis County, Missouri.

Mimlitz's clinic, according to marketing materials prepared by the clinic, specialized in treating men who were experiencing a lack of energy, decreases in strength and endurance, and decreased athletic ability.

9.      Mimlitz contacted a HGH distributor who had a bank account in the United States. On or about March 30, 2014, Mimlitz sent an email to an associate of this HGH distributor, seeking HGH for use at Mimlitz's clinic for his male patients who wanted increased energy, strength, endurance, and athletic ability.   The associate advised that because of "heat" from "USA and FDA for processing growth hormone" credit cards could not be used for purchasing HGH. The associate told Mimlitz to fund HGH transactions by sending direct deposits to the HGH distributor's bank account.

10.     From on or about March 30, 2014 through on or about June 17, 2015, Mimlitz and the HGH distributor engaged in numerous HGH transactions for approximately forty of Mimlitz's HGH patients, with Mimlitz sending direct deposits to the HGH distributor's bank account to fund individual HGH purchases for assorted clinic patients.   Mimlitz had some of the HGH sent to patients' addresses, and some of the HGH sent directly to his medical office.

11.     The HGH that Mimlitz ordered for his patients or received at his clinic were different than the U.S. FDA approved versions of HGH that are lawfully sold in the U.S.   These unapproved drugs lacked the required labels, dosage, use instructions, manufacturing pedigree, or were otherwise different versions of the drugs approved for sale in the United States.

12.     These drugs were therefore "unapproved," "misbranded," "adulterated," or "counterfeit" under United States law.

3

13.     Mimlitz charged his patient's higher prices for the HGH than what it cost him to acquire the HGH from the distributor.

14.     Some of Mimlitz's HGH patients complained of health problems or a lack of improvement from the HGH, and stopped using the HGH.

13.     On or about March 7, 2016, the United States obtained $59,500.00 in the form of a cashier's check made payable to the United States Customs and Border Patrol, which funds Mimlitz   admitted represented the proceeds of the conspiracy described above.

## CLAIM

### Count I - Forfeiture as Proceeds of the Conspiracy

14.     Each of the foregoing allegations is hereby incorporated by reference as if fully set forth herein.

15.     Section 321(g)(1) of Title 21 defines a "drug" to include any article (other than food) intended to affect the structure or any function of the body of man or other animals; and articles intended for use as a component of any articles.

16.     No person can provide a drug to consumers in the United States unless it has first been approved by the FDA pursuant to 21 U.S.C. § 355(a).

17.     Under Title 21, United States Code, Section 355(b)(1), before a new drug may be introduced into interstate commerce, the FDA must approve the manufacturing process, labeling, and packaging.

18.     Section 352(a) of Title 21 provides that a drug is deemed to be misbranded if its labeling is false or misleading in any particular.

19.     Section 351(a) of Title 21 provides that a drug is adulterated if it was prepared or

4

packed or held under insanitary conditions where it may have become contaminated or if it was packed or held in a manner inconsistent with current good manufacturing practices.

20.     Section 21 of Title 21 defines a "counterfeit drug" as either a drug or a label that bears a trade name that falsely represents who actually manufactured, packed, or distributed it.

21.     Section 545 of Title 18 provides that no person may knowingly or willfully import or bring into the United States, any merchandise contrary to law, or receive, conceal, buy, sell, or in any manner facilitate the transportation, concealment, or sale of such merchandise after importation, knowing the same to have been imported or brought into the United States contrary to law.

22.     Section 545 of Title 18 further provides that the value of any merchandise introduced into the United States in violation of said section shall be forfeited to the United States.

23.     Section 981(a)(1)(C) of Title 18 provides that "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of section 545 . . . , or a conspiracy to commit such offense" is subject to forfeiture

24.     In response to Mimlitz's drug orders, HGH drugs were imported into the United States that were not FDA-approved, were misbranded in that they contained foreign labeling and instructions, and were adulterated in that the methods of drug storage and shipment were not appropriate and did not provide adequate protecting against foreseeable external factors in storage and use that can cause deterioration or contamination of the drug products.   Mimlitz did also receive, conceal, buy, sell, or facilitate the sale of said items contrary to United States law.

25.     Also as part of the conspiracy, persons sending the HGH to the Eastern District of Missouri conspired to violate 18 U.S.C. § 545.

26.     The defendant property is subject to forfeiture because it constitutes or is derived from proceeds traceable to the conspiracy to violate the foregoing criminal statutes.

27.     Under Section 984 of Title 18, in any forfeiture action in rem in which the defendant property is funds deposited in an account in a financial institution, it shall not be necessary for the government to identify the specific property involved in the offense that is the basis for the forfeiture, and any identical property found in the same place or account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture.

WHEREFORE the United States prays that this Court decree that all right, title, and interest in the defendant properties be condemned and forfeited to the United States of America, and for such other and further relief as the Court deems just and proper.

Dated: March 29, 2016                    Respectfully submitted,

RICHARD G. CALLAHAN
United States Attorney

*/s/ Richard E. Finneran*
RICHARD E. FINNERAN, #60768
Assistant United States Attorneys
111 South 10th Street, Suite 20.333
Saint Louis, Missouri 63102
Telephone:   (314) 539-2200
Facsimile:   (314) 539-2287
*richard.finneran@usdoj.gov*

## VERIFICATION

I, Dwayne Haferkamp, hereby verify and declare under penalty of perjury that I am a Special Agent with the United States Customs and Border Patrol, that I have read the foregoing Verified Complaint and know the contents thereof, and that the matters contained in the Verified Complaint are true to my own knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, as well as my investigation of this case, together with others, as a Special Agent with the Food and Drug Administration.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on: _____3/29/16_____

           (date)

Dwayne Haferkamp
Special Agent
US Customs and Border Patrol

7